# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **RICHARD HATCHEL, #531786,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:25-cv-00374 |
| **LINDA THOMAS, et al.,** | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

State inmate Richard Hatchel filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application to proceed in forma pauperis (IFP) (Doc. No. 2) that he subsequently amended (Doc. No. 7).

This case is before the Court for ruling on Plaintiff's IFP application and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. PAUPER STATUS

Subject to certain statutory requirements, see 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 civil filing fee. Because Plaintiff's IFP application, as amended, complies with the applicable statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee, that application (Doc. Nos. 2 and 7) is **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). When the prisoner proceeds IFP, the fee is $350 instead of $405, see id. § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and

may be paid in installments over time via an assessment against his inmate trust account. Id. § 1915(b)(1)–(2).

Accordingly, Plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. Id. § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. Id. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim

upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175, 181 (2024) (quoting Iqbal, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, Erickson v. Pardus, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. Inner City, supra.

**B. Allegations and Claims**

Plaintiff alleges that, despite his status as a minimum-security inmate, he was transferred to a medium-security prison, Trousdale Turner Correctional Center (TTCC), in April 2024 and assigned a cell in Fox-Charlie (FC) Unit. (Doc. No. 1 at 6). On May 11, 2024, two correctional officers, Waller and Bears, let three inmates from Fox-Bravo (FB) Unit into FC Unit, and those inmates came to Plaintiff's cell and robbed him at knifepoint. (Id.). Bears opened the door to let

the inmates out of FC Unit with Plaintiff's property in a laundry cart and then escorted them back to FB Unit. (Id.).

The next day, May 12, 2024, Plaintiff told Sergeant Sanders about the situation and stated that he was in fear for his life, but Sanders responded that "Corecivic cannot have people checking in" to protective custody, so Plaintiff should move along. (Id. at 6–7 & n.1). On May 13, Plaintiff lodged the same plea for help with Unit Manager Suri, but Suri responded that he should learn to protect himself and his property, including by procuring a knife. (Id. at 7). Both Sanders and Suri made reference to Plaintiff's race—"[t]ake your white ass on"; "all you white guys always expect us to help you"—in refusing to act on his concern. (Id.). Plaintiff wrote to TTCC Warden Vantell and Associate Warden Porter multiple times, and also had his family call, but got no relief. (Id.).

On May 18, 2024, another corrections officer, Patel, allowed the same three inmates to enter FC Unit. (Id.). Those inmates "terrorized' Plaintiff, but he "managed to lock himself in his cell before they reached him and thus avoided being assaulted or robbed." (Id.). On May 20, Plaintiff told Nurse Green and Mr. Fisher, both healthcare providers, about the situation. Mr. Fisher told Plaintiff that he would speak to the new Unit Manager, Ms. Blankmoore (who apparently replaced Defendant Suri as manager of FC Unit), about the situation. (Id.). Blankmoore and Captain Smith spoke with Plaintiff later that day and had him watch the security camera footage from May 11 to identify Officers Waller and Bears, who let the three inmates into FC Unit. (Id.). The perpetrators' cell was then searched, and Plaintiff's television was retrieved. (Id.).

On June 4, 2024, Plaintiff was moved to Whiskey-Alpha Unit. On June 7, he was assaulted and robbed of his commissary at knifepoint, by an inmate who claimed to "know all about" Plaintiff from both TTCC staff and the inmate's "partner." (Id. at 8).

The Complaint names the following Defendants: Linda Thomas, Tennessee Department of Correction (TDOC) Assistant Commissioner; TTCC Warden Vincent Vantell; Jermaris Porter, Associate Warden of TTCC at the time of the incidents described in the Complaint; Fabian Sanders, a TTCC Sergeant at the time; Unit Manager Rajinish Suri; and Correctional Officers Waller, Bears, and Petal. (Id. at 2–3). Plaintiff first claims that "the Agency"—presumably referring to TDOC—violated its own policies by transferring him, a minimum-security inmate, to TTCC, a medium-security facility where Plaintiff was housed in the same unit with higher-security inmates. (Id.). Plaintiff further claims that Defendants Waller, Bears, Petal, Suri, and Sanders violated his Eighth Amendment rights by failing to protect him from harm at the hands of his fellow inmates; that Suri and Sanders discriminated against him based on his race; that Defendants Vantell and Porter were deliberately indifferent to his safety and failed properly to train their staff; and that Thomas was deliberately indifferent to the safety issues brought to her attention in Plaintiff's grievance. (Id. at 9–10). All Defendants are sued in their personal and official capacities. As relief, Plaintiff seeks an award of damages, as well as an injunctive order for his transfer away from the CoreCivic-operated TTCC,[1] to a TDOC facility where he can be housed with other minimum-security inmates. (Id. at 10.).

C. Analysis

1. <u>Claims against Defendants in their personal capacity</u>

Correctional officers have a duty to "take reasonable measures to guarantee the safety of the inmates" they guard. Farmer v. Brennan, 511 U.S. 825, 832 (1994). When prison guards fail to protect one inmate from an attack by other inmates, an Eighth Amendment violation may occur.

---

[1] TTCC "is a medium security facility managed by CoreCivic, a private corrections management firm." https://www.tn.gov/correction/state-prisons/state-prison-list/trousdale-turner-correctional-center.html (last visited Jan. 27, 2026).

See Walker v. Norris, 917 F.2d 1449, 1453 (6th Cir. 1990). However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." Wilson v. Yaklich, 148 F.3d 596, 600 (6th Cir. 1998). The inmate must show that the defendant prison official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. Farmer, 511 U.S. at 828, 834; Greene v. Bowles, 361 F.3d 290, 294 (6th Cir. 2004). To meet this standard, the inmate must show "that the official was subjectively aware of the risk" and "disregard[ed] that risk by failing to take reasonable measures to abate it." Greene, 361 F.3d at 294 (quoting Farmer, 511 U.S. at 847).

Applying this standard in circumstances similar to those presented here, the Sixth Circuit in Bush v. Dickerson, No. 16-6140, 2017 WL 3122012 (6th Cir. May 3, 2017), found that the prisoner-plaintiff's Eighth Amendment claim should proceed. The plaintiff in Bush claimed failure to protect based on allegations that he was housed in a segregated unit and was sleeping in his cell when the guard who controlled the cell door's electronic lock appeared to intentionally open it to allow multiple assailants inside. Id. at *2–3. Likewise, at this initial stage and for purposes of initial review, Plaintiff alleges that, shortly after he arrived at TTCC and was assigned a cell in "[FC] Unit, the orientation pod." (Doc. No. 1 at 6). There, Defendants Waller, Bears, and Petal "direct[ly]" failed to protect him by providing the opportunity for armed inmates to access the unit. (Id. at 9). This is sufficient to advance a plausible claim that these Defendants were deliberately indifferent to: (1) the risk that Plaintiff would be seriously harmed in the attack and robbery on May 11, 2024 (in the case of Waller and Bears), and (2) the attempted attack and robbery on May 18, 2024 (in the case of Petal). It is also reasonable to infer, as Plaintiff suggests (see id.), that Waller and Bears had the opportunity to intervene when Plaintiff was held at knifepoint by the three but failed to do so. See Walker, 917 F.2d at 1453 ("Viewing the evidence in the light most

favorable to the plaintiff, the jury could have concluded that [the] officers . . . had opportunities to prevent the [attack] . . . by intervening," but failed to do so.); Brazelton v. Coffee Cnty., No. 4:17-cv-00036, 2018 WL 3999822, at *3 (E.D. Tenn. Aug. 21, 2018) (citing Carico v. Benton, Ireland, and Stovall, 68 F. App'x 632, 639 (6th Cir. 2003)). ("[W]here an officer provides an opportunity for attack and does nothing or stands idly by while an attack takes place without intervening, he violates the attacked prisoner's constitutional rights."). Plaintiff's failure-to-protect claim will proceed for further development against Defendants Waller, Bears, and Petal in their personal capacity.

The personal-capacity claim against Unit Managers Suri and Sanders[2]—that, for reasons including Plaintiff's race, these supervisory officials failed to act to protect him in response to his report that he had been attacked and robbed by other inmates—will likewise proceed for further development. "A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity." Sanford v. Armour, No. 19-1270-JDT-CGC, 2020 WL 4369452, at *8 (W.D. Tenn. July 30, 2020) (citing, e.g., Grinter v. Knight, 532 F.3d 567, 575–76 (6th Cir. 2008)). However, for purposes of initial review, Suri and Sanders's failure to act in response to Plaintiff's reported safety concern, coupled with their presumed knowledge that Waller and Bears remained on duty and able to again grant Plaintiff's assailants access to FC Unit, adequately demonstrates that they "at least knowingly acquiesced in [Waller's] and [Bears's] conduct." Venema v. West, 133 F.4th 625, 634 (6th Cir. 2025). This level of involvement is sufficient to allow the claim against Suri and Sanders in their personal capacity to proceed.

---

[2] Sanders, though "a Sergeant at the time of the incidents" (Doc. No. 1 at 2), is described along with Suri as a superior officer to whom "Plaintiff reported the incident" of Waller and Bears's misconduct. (Id. at 4, 6–7).

7

Defendants Vantell and Porter, however, are not properly sued for damages in their personal capacity. Unlike Suri and Sanders, the Complaint does not allege that they were personally involved in failing to protect Plaintiff, except by their unresponsiveness to his grievances or letters (see Doc. No. 1 at 7 ("Hatchel thereafter wrote Warden Vantell and Associate Warden Porter multiple times as well as having his family call, with no result.")) and by their failure properly to train their staff at TTCC. (Id. at 10). But "a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability." Sanford, 2020 WL 4369452, at *8 (citing, e.g., Simpson v. Overton, 79 F. App'x 117, 120 (6th Cir. 2003)). Moreover, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" Peatross v. City of Memphis, 818 F.3d 233, 242 (6th Cir. 2016) (quoting Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) ("§ 1983 liability must be based on more than respondeat superior, or the right to control employees")). There is no allegation of such direct participation by the TTCC Warden or Associate Warden here.

Nor can TDOC Assistant Commissioner Thomas be held personally liable for the misconduct attributed to her or her employer. Specifically, Thomas's liability cannot be established for Plaintiff's transfer to TTCC in April 2024, or for subsequently "being deliberately indifferent to the issues brought to her attention" in a grievance (Doc. No. 1 at 10), unless she authorized or acquiesced in Plaintiff's mistreatment by "active unconstitutional behavior," rather than by "a mere failure to act." Shehee, 199 F.3d at 300 (quoting Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998)). Although Plaintiff asserts that Thomas's "liability exceeds that of simple respondeat superior" (id.), his allegations do not bear that assertion out.

### 2. Claims against Defendants in their official capacity

As to the official-capacity claims against Defendants Waller, Bears, Petal, Vantell, Porter, Suri, and Sanders, those claims are treated as claims against CoreCivic, the corporate entity that employs them. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citations omitted); Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) (noting that "individuals sued in their official capacities stand in the shoes of the entity they represent," such that the entities that employ such individuals "are the only true defendants in th[e] case"). But CoreCivic cannot be held liable unless Plaintiff's injuries resulted from the application of a corporate policy or custom, Savoie v. Martin, 673 F.3d 488, 494 (6th Cir. 2012), which Plaintiff does not allege, either as to the security of residential units and residents or as to the training of employees. "[C]onclusory allegations of corporate indifference to proper training are not sufficient to support a plausible claim under Section 1983." Wright v. Vantell, No. 3:24-CV-00330, 2025 WL 585792, at *3 (M.D. Tenn. Feb. 21, 2025) (citing Johnson v. City of Chicago, 711 F. Supp. 1465, 1472 (N.D. Ill. 1989)). Accordingly, the official-capacity claims against Waller, Bears, Petal, Vantell, Porter, Suri, and Sanders will be dismissed.

Finally, as to the official-capacity claim against Thomas, a suit against her in that capacity is the same as a suit against TDOC, which is an arm of the State of Tennessee and therefore immune from suit under the Eleventh Amendment, except insofar as the suit seeks prospective injunctive relief. Russell v. Lundergan-Grimes, 784 F.3d 1037, 1046 (6th Cir. 2015) (a suit against a state employee in his official capacity "is a suit against the State itself" and is thus barred by the Eleventh Amendment) (citing Graham, 473 U.S. at 165–66, and Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)); Diaz v. Michigan Dep't of Corr., 703 F.3d 956, 964 (6th Cir. 2013) (discussing the "exception to Eleventh Amendment sovereign immunity" announced in Ex parte Young, 209 U.S. 123 (1908)); Atkins v. Sutton, No. 3:25-CV-115, 2026 WL 18902, at *2

9

Case 3:25-cv-00374   Document 10   Filed 01/30/26   Page 9 of 11 PageID #: 93

(M.D. Tenn. Jan. 2, 2026) (citing cases). Though the Complaint seeks the injunctive relief of returning Plaintiff to a TDOC facility that comports with his minimum-security status (Doc. No. 1 at 10), the docket shows that Plaintiff has since been transferred to Northeast Correctional Complex in Mountain City, Tennessee (Doc. No. 9)—a TDOC facility for inmates "ranging from minimum to close custody." https://www.tn.gov/correction/state-prisons/state-prison-list/northeast-correctional-complex.html (last visited Jan. 27, 2026). This claim to injunctive relief is therefore moot. See Colvin v. Caruso, 605 F.3d 282, 289 (6th Cir. 2010) (finding that prison transfer mooted claims for injunctive relief directed at former prison's policies and procedures) (citing Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996)).

### III. CONCLUSION

As explained above, the Complaint in this case will be allowed to proceed against Defendants Waller, Bears, Petal, Suri, and Sanders in their personal capacity.[3] All other claims and Defendants are **DISMISSED**. Plaintiff's request for injunctive relief is **DENIED** as moot.

In light of the foregoing, Plaintiff's Motion to Ascertain Status (Doc. No. 8) is **GRANTED**. With the case still in the pleading stage, his Motion for Appointment of Counsel (Doc. No. 3) is **DENIED** as premature, without prejudice to renewal at a later date after service of process is accomplished.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each of Defendants Waller, Bears, Petal, Suri, and Sanders. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the

---

[3] The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude any defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendants. Fed. R. Civ. P. 4(b) and (c)(3).

Resources for pro se litigants, including instructions for how to accomplish service of process, are available free of charge on the Court's website as well as by request to the Clerk's Office so long as the privilege is not abused.

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE